IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

A. C. FOX WILLIAMS, #1940514,          )
                                       )
          Petitioner,                  )
                                       )
     v.                                )          CASE NO. 2:10-cv-1010-MEF
                                       )                    [WO]
                                       )
CARTER DAVENPORT, et al.,              )
                                       )
          Respondents.                 )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for writ of habeas corpus filed by A. C. Fox Williams ["Williams"], a state inmate.  Williams challenges his convictions for reckless murder, first-degree assault and third degree assault imposed upon him by the Circuit Court of Montgomery County, Alabama on January 12, 2006.[1]  The trial court sentenced Williams as a habitual offender with one prior felony conviction to life in prison on the reckless murder conviction, life in prison on the first-degree assault conviction and one year in the county jail on the third-degree assault conviction, all to be served consecutively.  *Respondent's Exhibit A - Doc. No. 32-11 at 66.*

---

[1] A Montgomery County Grand Jury indicted Williams for one count of reckless murder and two counts of first-degree assault.  At trial, the jury found Williams guilty of one count of reckless murder of Leonard Ledyard in violation of Ala. Code § 13A-6-2, one count of first-degree reckless assault of Alonzo Jackson in violation of Ala. Code § 13A-6-20, and one count of third-degree reckless assault of Fredrick Goodwyn of Ala. Code § 13A-6-22. *Respondents' Exhibit A - Doc. No. 32-2 at 19-20; Respondents' Exhibit D - Doc. No. 32-14 at 1.*

## A.  Direct Appeal Proceedings

Williams filed a direct appeal of his convictions in which he raised the following claims for relief:  (1) The trial court committed reversible error by refusing to grant Williams a hearing on his motion to suppress; (2) The evidence was insufficient to support the guilty verdicts because no one saw who shot the victims, no bullets were removed from the assault victims, the bullet casings found at the scene were not sufficiently connected to Williams, the handgun found at the scene was not used by Williams, the victim had been carrying a gun, and Williams began running and only returned fire when he was fired upon; and (3) The trial court committed reversible error at the sentencing hearing by considering evidence that Williams assaulted a police officer between the time of trial and sentencing. *Respondents' Exhibit B (Williams's Brief on Direct Appeal) - Doc. No. 32-12* at 2.

On February 23, 2007, the Alabama Court of Criminal Appeals affirmed Williams' convictions in an unpublished memorandum opinion.  *Respondents' Exhibit D - Doc. No. 32-14*.  Because it is helpful to understanding the issues in this case, this court quotes the appellate court's opinion at length:

> The evidence presented at trial established that several days before April 18, 2003, A.C. Williams -- a/k/a "Fox" Williams -- got into a dice game at Drew's Place, a pool hall in Montgomery owned by Leonard Ledyard. During the game, Williams lost $1500. Williams was concerned about such a significant loss because he had the responsibility of supporting his girlfriend and their child. Williams subsequently learned from an acquaintance that the dice game had been rigged with "loaded" dice. Gerald Sankey, Williams's cousin, was with Williams the day he lost $1500.

2

After leaving the pool hall, Williams told Sankey that he was going back to Drew's Place and that he planned to get his money back. Williams asked Sankey to join him, but Sankey declined. Sankey attempted to discourage Williams from returning to Drew's Place, because Sankey knew of Ledyard's reputation from the time they spent in prison.

On April 18, 2003, Frederick Goodwyn, Alonzo Jackson, and Tony Shaw went to Drew's Place. When they arrived, they found Ledyard shooting pool. Goodwyn wanted to purchase a pack of cigarettes, but Ledyard asked him to wait until his pool game was finished to make the purchase. Jackson testified that there were approximately seven people in the pool hall at that time. While Goodwyn waited to buy cigarettes, he saw Williams -- armed with a rifle -- at the entrance to the pool hall. Williams demanded that Ledyard give him back his money. Ledyard emptied his pockets, then raised his shirt and told Williams that he did not have his money. Ledyard walked toward the entrance to the pool hall and told Williams that he could not enter the premises with the rifle before stepping outside to talk to Williams. Jackson testified that as Ledyard exited the premises, he was patting his pockets indicating to Williams that he did not have any money.

Several minutes later, Jackson, Shaw, and Goodwyn heard gunshots outside. None of the three men witnessed the shooting. Goodwyn testified that he heard 3-4 gunshots fired in rapid succession. On cross-examination, Goodwyn admitted that in his statement he gave to police, he told law enforcement officers that he heard 10 shots, and conceded that he may have heard more than 4 shots. Shaw testified that he heard 5-6 shots. In addition, Montgomery Police Officer D.D. Davis testified that he was on patrol approximately two blocks from the shooting when he heard 6-7 gunshots coming from the vicinity of Drew's Place. Goodwyn, Jackson, and Shaw all reviewed a photographic lineup and identified Williams as the man they saw on April 18, 2003, with the rifle.

Eric Moore, a patron of Drew's Place, stated that his vehicle was parked along the side of the building on April 18, 2003. He observed a black truck pull into the parking lot in front of the building and then pull around to the side of the building. Then, Moore heard 5-6 rapid gunshots. He walked around the building where he saw Williams holding a rifle and walking back towards the truck. At trial, Moore positively identified Williams as the man he saw walking towards the truck with the rifle.

Ledyard received two bullet wounds in the back. Jackson and Goodwyn were attempting to flee when the shooting started, and were also

3

struck with bullets. Goodwyn was shot above his left kneecap, requiring the surgical implantation of an iron rod in his leg. A bullet entered Jackson's left arm and grazed his abdomen causing bleeding. None of the State's witnesses saw anyone other than Williams with a weapon. Jackson exited the premises, stopped police officers, and waited outside for the ambulance. Jackson testified that he did not see any weapons outside the pool hall lying on the ground. When the shooting stopped, Ledyard was lying facedown at the entrance to the pool hall. Moore walked to the entrance of the pool hall where Ledyard lay. Ledyard told Moore that he had been shot by "Fox."

Ledyard suffered severe intrabdominal injuries and vascular injuries as a result of his wounds, requiring surgery. Ledyard died in surgery. One bullet was recovered from the right side of Ledyard's chest cavity and another was recovered from his liver. An autopsy revealed that the gunshots were inflicted from a distance of a few feet. The gunshot wounds were determined to be the cause of Ledyard's death.

Investigators secured the scene outside Drew's Place, where they found nine shell casings. Eight of the casings were identified as spent .223 caliber shell casings and one was a spent .40 caliber casing; the latter appeared to have been run over several times by an automobile and did not appear to have been fired that day. Inside Drew's Place, a fully loaded .40 caliber Ruger handgun and a B.B. gun were found.

On the evening of the shooting, Williams had borrowed a truck legally registered to his father.[] After the shooting, Williams went back to the owner's home, apparently Williams's stepfather. Shortly thereafter, Williams's stepfather went to the location where Williams had left the truck and retrieved it. Williams spoke with Sankey after the shooting and told his cousin that he believed someone had been shot. Williams tried to give the gun to Sankey, who panicked, placed the gun down, and left. Later that evening, Williams left the house and met with Sankey and other family members. That evening, Williams went with a young woman, Pamela Hooks, and another man to Selma.

Police officers learned that Williams might have returned to a residence in Gibbs Village. A search warrant was obtained for the residence and when officers returned to execute the warrant they noted a black van parked nearby, which belonged to Williams's father or stepfather.[] Officers searched the van; specifically they were looking for an AR-15 rifle, similar to an M-16 rifle. Sergeant A. McCarto found plastic wrapping surrounding a white material. Sergeant McCarto felt the object, unwrapped it, and inside

4

discovered such a rifle. The rifle was "a Hesse Arms HAR15A2 5.56 millimeter weapon." Three magazines and several rounds of .223 caliber ammunition were also recovered during the search. Ballistics testimony revealed that the shell casings found at the scene of the shooting had similar markings to the ones test fired through the rifle, but there were not enough marking to confirm a match. . . .

> According to Detective Naquin, Williams told him the following:
>
>> "Basically [Williams] borrowed the gentleman's truck that [Detective Naquin] had interviewed earlier -- it was a black pick-up truck with the Bill Heard tag on it -- and that he had the rifle in the truck and that he went over to the bar to get--to try to get his money back from what he thought was a fixed dice game in which he lost money. And he confronted Mr. Ledyard, the victim, the deceased victim, about the money, and Mr. Fox explained that while he was doing that, and armed with the rifle confronting Mr. Ledyard, demand[ing] the money, he was approached by numerous other individuals that came running up and began shooting at him. And then he returned fire and left."

> (R. 291-292.)

Williams also admitted that he had been drinking that night. After the shooting, Williams stated that "[he] went home and then he got rid of the gun and left. . . ." He ended up going back over to the owner of the truck's house; then the owner of the truck came to the location in Gibbs Village and retrieved the truck.

> According to Williams, after he heard the first gunshot, allegedly fired by those pursuing him, he started running and shooting. Williams claimed that he told Sankey that he was fired upon when he went to Drew's Place to collect his money. However, Sankey never mentioned this information to the police. Other physical evidence collected from the scene and witness statements verified that only one weapon was fired that night. . . .

> In his defense, Williams called his sister Lisa Walters as a witness. Walters testified, that at the time of the shooting Williams was living in a hotel room with Pamela Hooks and their child because they could not afford an apartment. Walters stated that she was aware of the dice game in which her brother lost $1500. She further testified that Williams had asked Sankey to help him request a return of his money from Ledyard, but that Sankey

refused to assist Williams.

Devosia Nettles [whom Williams identifies as his cousin] testified that she was at Drew's Place on the night of the shooting. She admitted that she was a convicted felon with convictions for marijuana possession, second-degree theft of property, first-degree burglary, and "beating up a police officer." Nettles testified that she saw Ledyard come to the door when Williams had the rifle and saw a gun in the back pocket of Ledyard's pants. She further stated that Williams's rifle was pointed at the ground, not at Ledyard. Nettles witnessed the argument between the two men regarding the money from the dice game, passing by them as she exited the pool hall and walked around to the back of the building. At that time she heard a single shot, then six or seven shots in rapid succession followed by another single shot. She testified that the single shots did not sound the same as the rapidly fired shots. She asserted that, with the exception of her testimony at trial, she had talked to no one about the case. She testified that she knew that people referred to Williams as Fox but that she did not know him personally. Nettles stated that she never told police about her observations because she was on probation at the time and was afraid she might be violating her probation by being in the area of the shooting.

Pamela Hooks testified that she was in a relationship with Williams at the time of the shooting. She stated that she and Williams needed money to rent an apartment. She said that a few days prior to the shooting, Williams had lost $1500 in a dice game at Drew's Place. When Williams learned that he had been cheated out of his money, his demeanor changed. Williams began to call acquaintances to see if they would talk to Ledyard about giving Williams his money back. According to Hooks, no one was willing to help Williams because Ledyard "be tripping." Williams was afraid of Ledyard because it was well known that Ledyard didn't tolerate "no junk."

After Williams returned from the shooting, he told Hooks something had happened but shared no other details about what he might be referencing. He then began to cry. Williams and Hooks thought that Ledyard's associates might be looking for Williams, so the two fled to Selma, even though Hooks was aware that Williams was a suspect in the Drew's Place shooting. . . .

*Respondents' Exhibit D - Doc. No. 32-14* at 2-7 (footnotes omitted). The court of appeals

rejected all of Williams' claims. First, it held that Williams did not file a timely, specific

objection to preserve his claim that the trial court refused to hold a hearing on his suppression motion.  *Id.* at 8.   Second, regarding Williams' sufficiency of the circumstantial evidence claim, the court of appeals held Williams did not raise a claim that the State failed to prove a prima facia case or the elements of reckless murder under Alabama Code § 13A-6-2.  It held that circumstantial evidence supported the jury's finding that Williams was the shooter, that bullets from his rifle killed Ledyard and wounded Goodwyn and Jackson, and that the evidence did not suggest a reasonable theory from which the jury could find Williams innocent of murder of Ledwyn.  *Id.* at 11-12; *see also Cumbo v. State*, 368 So.2d 871, 875-76 (Ala. Crim. App. 1978) (standard for verdict based on circumstantial evidence is the evidence must be sufficient for a reasonable jury to conclude that the evidence excludes every reasonable hypothesis but the defendant's guilt). The appellate court held Williams did not preserve his claim that the trial court should have acquitted him of charge of first-degree assault against Goodwyn.[2]  In addition, the court determined that there was ample evidence to convict Williams of third-degree assault of Goodwyn.  *Respondents' Exhibit D - Doc. No. 32-14* at 13.  The court further held that there was sufficient evidence to find Williams guilty of first-degree assault of Jackson.  *Id.* Finally, the court of appeals held Williams failed to preserve his claim that at sentencing

---

[2]The appellate court noted that although Williams challenged the sufficiency of the evidence to support his conviction for the first degree-assault of Goodwyn, the "jury convicted him of third-degree assault as a lesser included offense of first-degree asault."

the court should not have considered facts surrounding Williams' assault on a police officer that occurred between trial and sentencing. *Id.* The court also refused to address Williams' claim that counsel was ineffective by failing to object to the evidence because Williams raised it on appeal for the first time. *Id.* at 14.

Williams filed an application for rehearing, which the Alabama Court of Criminal Appeals overruled on March 16, 2007. *Respondents' Exhibit E - Doc. No. 32-15; Respondents' Exhibit F - Doc. No. 32-16.* Williams then filed a petition for writ of certiorari with the Alabama Supreme Court in which he argued the Alabama Court of Criminal Appeals decision was in conflict with Alabama caselaw, the Alabama Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. *Respondents' Exhibit G - Doc. No. 32-17* at 4-6. The Alabama Supreme Court denied the petition for writ of certiorari on August 10, 2007, and the certificate of judgment issued on the same date. *Respondents' Exhibit H - Doc. No. 32-18.*

## B. Postconviction Proceedings

Williams sought postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure, in which he claimed (1) trial counsel provided ineffective assistance by failing to object to Officer D. D. Davis' testimony regarding gunshots because Davis was not certified as an expert and he gave an opinion on the ultimate issue at trial; (2) trial counsel was ineffective by failing to object when the trial judge, not the clerk of court,

administered the oath to the petit jury; (3) trial counsel was ineffective in failing to preserve Williams' challenge to the decisions refusing to grant Williams a hearing on his suppression motion and refusing to continue trial; (4) appellate counsel was ineffective by failing to challenge trial counsel's performance and preserve the claims regarding the motion to suppress and the motion to continue trial; and (5) trial counsel was ineffective by failing to request discovery for exculpatory evidence consisting of the alleged loaded dice and tables that were used to cheat Williams out of his money. *Respondents' Exhibit I - Doc. No. 32-19* at 15-48.

On October 10, 2008, the postconviction trial court denied Williams' Rule 32 motion on the merits in case number CC04-1723.60TSM.  It was the last state court to address the merits of Williams' claims, and it ruled as follows:

> 1. Petitioner has not shown a failure to administer an oath to the jurors. This Court notes that the standard practice in the Fifteenth Judicial Circuit is for an oath to be administered to all potential jurors in the juror assembly room prior to trial.
> 2. In order to succeed on a claim of ineffective assistance of counsel, Petitioner must show that "but for" his trial counsel's deficient performance the results of the proceedings would have been different. *Howard v. State*, 551 So. 2d 1155, 1158 (Ala. Crim. App. 1989). Petitioner has failed to even show that trial counsel's performance was deficient.
> 3. Petitioner additionally claims that his appellate counsel was ineffective in not alleging ineffective assistance of trial counsel by not preserving an objection to the denial of the motion to continue trial. He has failed to show that trial counsel was deficient in such respect; therefore, appellate counsel has not been shown to be deficient.  Additionally, Petitioner could have simply alleged a deficient performance by trial counsel in his Rule 32 Petition, as he did with other specific deficiency claims.

*Id.* at 70-71; *see also Howard*, 551 So. 2d at 1158 (citing *Strickland v. Washington*, 466 U.S. 668 (1984) as the standard for reviewing claims of ineffective assistance of counsel).

Williams thereafter inquired about the status of the case, and on December 30, 2008, the clerk's office informed him the case was still pending. *Respondents' Exhibit J - Doc. No. 32-20* at 18. Six months later, Williams again inquired about the status of the case, at which point he learned it had been dismissed two months before the clerk of court told him it was still pending in December 2008. *Id.* at 19.

Williams then filed a second Rule 32 motion with the court, arguing that he did not receive notice of the October 10, 2008, decision, and he should be allowed to pursue an out-of-time appeal from it. He also argued that the postconviction court lacked jurisdiction to rule on October 10, 2008. *Id.* at 6, 14, 16; *see also* Ala. R. App. P. 32.1(f) (petitioner may file action pursuant to Rule 32 if "[t]he petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part"). The State resisted the claim regarding jurisdiction, but it conceded that Williams should be allowed to file an out-of-time appeal. *Respondents' Exhibit J - Doc. No. 32-20* at 26-27. On September 7, 2009, under case number CC-04-1723.61TSM, the postconviction court rejected Williams' jurisdictional claim, but it granted relief on his request for an out-of-time appeal from the first Rule 32 petition. *Id.* at 30-32.

Williams appealed.  In his notice of appeal he stated he was appealing "from the judgment entered on the 4th day of September, 2009, denying Williams Rule 32 Post-Conviction Petition."  *Id.* at 33.[3]  On the Docketing Statement accompanying his appeal, the case number was listed as CC-04-1723.61, which was the case connected to Williams' second Rule 32 petition, and the issues for appeal were listed as (1) ineffective assistance of counsel for (a) failure to request exculpatory evidence, (b) failure to state grounds for a continuance, and (c) failure to preserve issue where the trial court failed to conduct a hearing to suppress illegally obtained evidence of a gun; and (2) ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel.  *Id.* at 36-37; *see also* Ala. R. App. P. 3(e) (requiring Docketing Statement).  These issues were the same issues he raised in his first Rule 32 action, and they were not the issues he raised in his second Rule 32 action.  Williams also included as part of his appeal a Reporter's Transcript Order in which he listed the date of the judgment appealed from as October 10, 2008, the date his first Rule 32 was denied, and the case number as CC-04-1723.61  *Respondents' Exhibit J - Doc. No. 32-20* at 38.

As recounted by the Alabama Court of Criminal Appeals, when Williams realized the postconviction appellate record did not include the materials from his first

---

[3]The handwritten case number listed in the caption was "CC-04-1723."  The handwritten number ".61" was added next to the case number,  slightly above the other numbers.  *Respondents' Exhibit J - Doc. No. 32-20* at 33.

postconviction proceedings, he sought to supplement the record.  *Respondents' Exhibit M -*

*Doc. No. 32-23* at 2.  The State also moved to supplement the record with the first Rule 32

proceedings.[4]   The trial court, however, refused to allow Williams or the State to

supplement the appellate record with the original Rule 32 petition.  *Id.*  In his brief before

the Court of Appeals, Williams did not raise issues related to his second Rule 32 motion.

Instead, he argued the postconviction court should have granted him a hearing and relief

regarding his claims concerning Officer Davis' testimony, trial counsel's failure to object

to the administration of the oath to the petit jury, trial counsel's failure to preserve

Williams' challenge to the decisions refusing to grant Williams a hearing on his

suppression motion and refusing to continue trial, direct appeal counsel's failure to

preserve the ineffective assistance of trial counsel argument regarding the motion to

suppress and continuance, and trial counsel's failure to seek exculpatory evidence, namely,

the dice and table allegedly used to cheat Williams.   Williams also argued the

postconviction court should have allowed Williams to supplement the record on appeal

with the original Rule 32 petition. *Respondent's Exhibit K - Doc. No. 32-21* at 14-16.

The Alabama Court of Criminal Appeals affirmed.  It held Williams' notice of

---

[4]The State argued, "Rule 10(g) of the Alabama Rules of Appellate Procedure allows supplementation of the record with 'evidence that is material to any issue on appeal' and which 'correctly reflects what occurred in the trial court[.]' Further, 'The appellate court may, on motion of a party or on its own initiative, order that a supplemental or corrected record be certified and transmitted to the appellate court if necessary to correct an omission or misstatement . . . .'" *Respondents' Exhibit I - Doc. No. 32-19* at 7.

appeal was from the decision on his *second* postconviction action, not the first decision on

October 10, 2008. *Respondents' Exhibit M - Doc. No. 32-33* at 3. It held:

> In his brief on appeal, however, Williams raises claims relating to the dismissal of the first Rule 32 petition. Those claims Williams raised in his Rule 32 petition but fails to pursue on appeal are deemed abandoned. *Brownlee v. State*, 666 So. 2d 91, 93 (Ala. Crim. App. 1995). Additionally, any claim that Williams raises that was not included in his second Rule 32 petition (the petition from which he filed his notice of appeal) are not properly before this Court. *Chambers v. State*, 884 So. 2d 15, 19 (Ala. Crim. App. 2003). Because Williams appealed the dismissal, in part, of his second Rule 32 petition but only raises claims from his first Rule 32 petition, none of Williams's claims are properly before this Court.

*Id.* It further held that the postconviction trial court did not abuse its discretion in denying

Williams' motion to supplement the record because the "first Rule 32 petition was not

made part of the record during the proceedings on his second Rule 32 petition." *Id.*

Williams filed an application for rehearing, which the Alabama Court of Criminal

Appeals overruled on September 24, 2010. *Respondents' Exhibit N - Doc. No. 32-24;*

*Respondents' Exhibit O - Doc. No. 32-25.* Williams then filed a petition for writ of

certiorari with the Alabama Supreme Court. *Respondents' Exhibit P - Doc. No. 32-26.*

The Alabama Supreme Court denied the petition on November 12, 2010, and the certificate

of judgment issued on the same date. *Respondents' Exhibit Q - Doc. No. 32-27.*

### C. Federal Habeas Petition

Williams initiated this timely 28 U.S.C. § 2254 action on November 16, 2010. *See*

*Order of July 28, 2011 - Doc. No. 13.* He amended the petition, then clarified his claims

further in his response to the respondents' answer.  The claims are as follows:

1.  The appellate court erred when it failed to address the merits of the claim that trial counsel failed to object to Officer D. D. Davis' testimony on the grounds that Davis was not certified as an expert to testify to the caliber of gun fired, and Davis gave an opinion on the ultimate issue at trial, i.e., his opinion that a .40 caliber gun had not been fired.

2.  The state court failed to address the merits of the petitioner's claim of ineffective assistance of counsel for counsel's failure to properly preserve petitioner's right to a fair trial and effective assistance.

3.  The appellate court erred when it failed to address the merits of the petitioner's claims of ineffective assistance of appellate counsel for counsel's failure to challenge the assistance of trial counsel for trial counsel's failure to properly preserve the denial of the petitioner's right to a suppression hearing and the right to a continuance.

4.  The state court failed to address the merits of the petitioner's claims of ineffective assistance of trial counsel for counsel's failure to request exculpatory evidence, namely, the dice and table allegedly used to cheat Williams.

5.  The postconviction appellate court erred when it failed to address the merits of his claim that due to a clerical error of putting the wrong judgment date on his notice of appeal Williams lost his right to an appeal.

*Petition for Writ of Habeas Corpus - Doc. No. 1* at 6-7; *Petitioner's Amendment - Doc. No. 9*; *Petitioner's Amendment - Doc. No. 12; Petitioner's Resp. - Doc. No. 37*.

Respondents argue the claims pending before this court entitle Williams to no relief because they are procedurally defaulted or, in the alternative, the state court rulings on his ineffective assistance claims were not objectively unreasonable.  *Respondents' Answer - Doc. No. 27* at 3.  Specifically, the respondents contend that all of Williams' claims for federal habeas relief are procedurally barred from review because Williams failed to present these claims to the state courts in accordance with the State's procedural rules either at trial, on direct appeal, or on appeal from the trial court's order denying the Rule 32 petition.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel*'s reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."), *cert. denied*, 534 U.S. 1136 (2002); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n.9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 901 F.2d 770, 773 (11th

15

Cir. 1990).   Respondents maintain that the last state court to address the claims of ineffective assistance deemed the claims barred from review.  *Atkins*, 965 F.2d at 955 (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").

> By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935).  Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

Upon review of the § 2254 petition, the answers of the respondents, Williams' responses to the answers, the state court record, and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## II.  DISCUSSION

### A.  Procedural Default

Williams challenges the refusal of the state appellate courts to address his

underlying claims regarding counsel's performance and the postconviction trial court's rejection of his claims without holding a evidentiary hearing on them.  Respondents argue, however, the claims Williams presents in his petition for habeas corpus relief are procedurally defaulted because the state courts refused to address them in accordance with the State's own applicable procedural rules.  *O'Sullivan v. Boerckel, supra.; Henderson,* 353 F.3d 880, 891 (11th Cir. 2003); *Pruitt,* 348 F.3d at 1358-59.

As a prerequisite to filing a federal habeas action, the petitioner must have properly exhausted state court remedies, either on direct appeal or in a state post-conviction petition, 28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted)); *Kelley v. Sec'y Dep't of Corr.,* 377 F.3d 1317 1342-44 (11th Cir. 2004) (a petitioner cannot raise claims in federal court if those claims, including the factual basis for the claims, were not first properly exhausted in state court.).  To exhaust state remedies in accordance with the exhaustion requirement, the petitioner must fairly present every issue raised in his federal petition to each appropriate state court, including the state's highest court, alerting that court to the federal nature of the claim and a statement of the facts which entitle him to relief.  *Duncan,* 513 U.S. at 365-366; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404 U.S. at 277-278.  "[F]or purposes of exhausting state remedies, a claim for relief in a habeas

corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be exhausted, a federal claim must be fairly presented to the state courts."); *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (the exhaustion requirement is not satisfied when "the ineffective-assistance claim was 'presented' to the state courts [but] not presented in the manner that state law requires.").

It is not sufficient merely that the federal habeas petitioner has been through the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).  The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim."  *Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (alteration in original).

Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief.  For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.  *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992).  As we explained,

allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's "full and fair opportunity to address the claim on the merits."  The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the "serious and meaningful"

18

exhaustion of claims that Congress intended.

*Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9ᵗʰ Cir. 1992) (en banc) (holding that, where the habeas petitioner properly raised only one ineffective assistance claim on collateral attack in state court, he could seek federal relief based on that specific claim, but not based on other alleged attorney defects that were not presented to the state courts); *Maynard v. Lockhart,* 981 F.2d 981, 984-85 & n. 1 (8ᵗʰ Cir. 1992) ("To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court."). Furthermore, habeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way. *See Weeks [v. Jones]*, 26 F.3d [1030] at 1044-46 [(11ᵗʰ Cir. 1994)] (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.

*Kelley*, 377 F.3d at 1343-44. The court in *Kelley* further advised:

To ensure exhaustion, petitioners must present their claims in this manner of clarity throughout "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). As long as state supreme court review of a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that state must present their claims to the state supreme court to preserve those claims for federal review, even if review by that court is discretionary." *See id*. at 848-49, 119 S.Ct. at 1734.

*Kelley*, 377 F.3d at 1345. Consequently, to exhaust his state remedies, Williams was required to seek further review of his federal claims before the Alabama Supreme Court.

Even if a petitioner has presented the federal claims to the state courts, this court cannot review them if the state court rejects them on "adequate and independent" state

19

court grounds. *See Michigan v. Long*, 463 U.S. 1032, 1042 (1983); *see also Ward v. Hall*, 592 F.3d 1144, 1156–57 (11th Cir. 2010); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). The court uses a three-part test to determine whether a state court relied on an adequate and independent state court ground in rejecting a claim:

> "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim."[] [*Judd*, 250 F.3d at 1313.] Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *See id.* Third, the state procedural rule must be adequate, i.e., firmly established and regularly followed and not applied "in an arbitrary or unprecedented fashion." *Id.*

*Ward,* 592 F.3d at 1156-57 (footnote omitted).[5]

According to respondents, Williams' first misstep in his postconviction proceedings occurred when, despite being granted an opportunity to file an out-of-time appeal from his first Rule 32 petition, he did not. Instead, as the Alabama Court of Criminal Appeals ruled,

---

[5]The court in *Ward,* 592 F.3d at 1156 n.5, qualified the first prong with the following observation from the Supreme Court:

> The problem we face arises, of course, because many formulary orders are not meant to convey anything as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appears to rest primarily upon federal law, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

*Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (quotation marks, citations, and alterations omitted).

he filed an appeal, in part, from the ruling in his *second* Rule 32 petition, a proceeding in which he did not specifically raise his claims of ineffective assistance of counsel, and a proceeding in which he obtained relief to file an appeal out of time.[6]   Consequently, they argue, it was Williams' own error that prevented the court of appeals from reviewing his claims.

The Alabama Court of Criminal Appeals decision in Williams' case, which was not overturned by the Alabama Supreme Court, is "independent" of federal law because it "rest[s] entirely on state law grounds and [is] not [] intertwined with an interpretation of federal law."   *Ward*, 592 F.3d at 1157.   It is not clear, however, that the decision constitutes an "adequate" ground precluding relief, in other words, a state procedural bar that is "firmly established and regularly followed and not applied 'in an arbitrary or unprecedented fashion.'"   *Id.* (citation omitted).

Respondents state the Alabama state court relied on Alabama Rule of Appellate Procedure 3(c), which provides, in relevant part:

> The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. Such designation of judgment or order shall not, however, limit the scope of appellate review. . . .

Ala. R. App. P. 3(c).   But the Alabama state court did not discuss its rule "that a notice of

---

[6]Presumably the only issue remaining for appeal was Williams' claim that the trial court had no jurisdiction to rule on the first Rule 32 petition.

appeal, even if technically deficient, is valid if 'the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice.'" *Ex parte Taylor*, No. 1051315, 2008 WL 162601 at *8 (Ala. Jan. 18, 2008) (unpublished) (quoting *Edmondson v. Blakey*, 341 So. 2d 481, 483 (Ala. 1976)); *see also Taylor*, 2008 WL 162601 at *8 ("'The great hallmark of Rule 3, both in its language as amended over the years and in the construction the courts have put upon it, is liberality. The rulemakers and the judges have wanted to be sure that a possibly meritorious appeal is not denied its day in court because the appellant—or more often the appellant's lawyer—has left some i undotted or some t uncrossed.'" (quoting Charles Alan Wright et al., Federal Practice and Procedure § 3949.6 (3d ed.1999))). The court did not mention the Reporter's Transcript Order, which was part of the appeal Williams submitted and on which Williams listed the first Rule 32 decision as the date of judgment. It also did not address the Docketing Statement, on which Williams listed as issues for appeal only those issues raised in the first Rule 32 proceeding, not the second Rule 32 proceeding. *Respondents' Exhibit J - Doc. No. 32-20* at 37-38; *Respondents' Exhibit M - Doc. No. 32-23* at 3.

In refusing to address Williams' claim, the court relied on *Brownlee v. State*, 666 So.2d 91, 93 (Ala. Crim. App. 1995), in which the reviewing court refused to plumb an appellate record on a Rule 32 petition for plain error, and in which the reviewing court refused to consider "issues not listed and argued in brief." Unlike the appellant in

*Brownlee*, Williams did not ask for plain error review, and he raised his ineffective assistance claims in his brief.  The state agreed to brief the issues Williams raised once the record was supplemented with the first Rule 32 proceedings.  *Respondents' Exhibit L - Doc. No. 32-22* at 14-15.

The court of appeals also relied on *Chambers v. State*, 884 So.2d 15, 19 (Ala. Crim. App. 2003), as support for its statement that "any claim that Williams raises that was not included in his second Rule 32 petition (the petition from which he filed his notice of appeal) are not properly before this Court."  *Respondents' Exhibit M - Doc. No. 32-33* at 3.  In *Chambers*, the court held, "The new claims that petitioner presents for the first time on appeal are not properly before us.  *See Arrington v. State*, 716 So.2d 237, 239 (Ala. Crim. App. 1997) (holding that '[a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition')."  *Chambers*, 884 So. 2d at 19.  Neither the court in *Chambers* nor the court in *Arrington*, however, were faced with a situation in which a petitioner was seeking an out-of-time appeal of a previously dismissed Rule 32 petition.  Nowhere in the state court decision or caselaw cited by the parties to this court is there authority that under firmly established and regularly followed Alabama state law, a petitioner seeking permission to file an out-of-time appeal must include the first Rule 32 claims as part of the second Rule 32 petition, or that the appeal in such a case is limited to the judgment date listed only on the notice of appeal, and

that the Docketing Statement or other materials submitted with the notice of appeal cannot be considered in determining the appropriate judgment.

Respondents argue that even if the state court did not rely on an adequate ground to preclude relief, Williams' claims falter for a second reason. *Respondents' Answer - Doc. No. 27* at 10-11. When Williams sought rehearing before the Alabama Court of Criminal Appeals and further review before the Alabama Supreme Court, he did not raise his ineffective assistance of counsel claims. Instead, Williams argued the courts should review his ineffective assistance claims because the designation of the judgment date should not limit the scope of the appeal, the claims from his first Rule 32 petition were listed in his appeal, and he argued before the Alabama Supreme Court that the rules of appellate procedure were not "designed to catch the unwary on technicalities." *Respondents' Exhibit P - Doc. No. 32-26* at 6-7 (quoting *Edmondson*, 341 So. 2d at 484).

Rather than delve further into the question whether Williams has procedurally defaulted his federal claims without excuse, this Court turns to the simpler question of whether Williams is entitled to any relief on the merits of his underlying claims. "When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past." *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) (citations omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the

24

failure of the applicant to exhaust the remedies available in the courts of the State.").

Consequently, the court addresses Williams' underlying claims for section 2254 relief.[7]

## B. Claims for Relief

This federal court may consider a petition "for a writ of habeas corpus in behalf of

a person in custody pursuant to the judgment of a State court only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  Consequently, this Court has authority to grant habeas relief for errors

of federal constitutional law only, not state law.  *Id.*; *see also Ferguson v. Sec'y for Dep't

of Corr.*, 580 F.3d 1183, 1211-12 (11th Cir. 2009) (claim involving solely state law issues

---

[7]Williams argues he failed to receive a hearing during his postconviction proceedings, in violation of his due process and equal protection rights.  Whatever rights Williams may have under the federal Due Process Clause or the Fourteenth Amendment's equal protection guarantee in state postconviction proceedings, they surely would not be greater than those afforded federal inmates, and federal inmates are not guaranteed an evidentiary hearing in collateral proceedings.  *E.g.*, 28 U.S.C. § 2255 (motion may be denied if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *cf. Coleman v. Thompson*, 501 U.S. 722, 756 (1991) (no federal right to counsel in postconviction proceedings); *Ross v. Moffitt*, 417 U.S. 600, 616 (1974) ("The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process."); *Ex parte Walker*, 800 So.2d 135, 138 (Ala. 2000) ("A circuit court may summarily dismiss a Rule 32 petition without an evidentiary hearing if the judge who rules on the petition has personal knowledge of the actual facts underlying the allegations in the petition and states the reasons for the denial in a written order.) (quotation marks and citation omitted).  Williams mentions in his response, *see Doc. No. 37* at 42-43, that he was entitled to effective assistance of postconviction counsel pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), but he does not suggest that Alabama challenges to counsel's performance must be brought for the first time in a Rule 32 proceeding.  Finally, Williams does not request or establish under 28 U.S.C. § 2254(e)(2) that he is entitled to an evidentiary hearing in this federal proceeding to develop the factual basis of his claims.  *See* 28 U.S.C. § 2254(e)(2) (no evidentiary hearing shall be held unless the claim relies on a new, retroactive rule of constitutional law or a factual predicate that could not have been discovered previously, and the facts would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the petitioner guilty).

could not serve as the basis for a federal habeas claim).

For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The Supreme Court has held that a state court decision is "contrary to" federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694 (citing *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000)) Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams*, 529 U.S. at 411-13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II).

 "Objectively unreasonable" means something more than an "erroneous" or "incorrect"

application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision.  *See id.* at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).  The Court of Appeals for the Eleventh Circuit has held, "Clearly established federal law is *not* the law of the lower federal courts, including this Court.  Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'"  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original, quoting *Williams*, 529 U.S. at 412).  The reviewing court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Secretary, Dept. of Corrections*, 572 f.3d 1327, 1333 (11th Cir. 2009).  All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker v. Secretary, Dept. of Corrections*, 331 F.3d 764, 776 (11th Cir. 2003).

27

Habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (quoting *Harrington*, 131 S. Ct. at 786, and further quotation marks omitted).  "The usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.'"  *Allen v. Secretary, Florida Dept. of Corrections*, 611 F.3d 740, 748 (11th Cir. 2010) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted)).   As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  *Harrington*, 131 S. Ct. at 786.

Federal habeas courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Even when the state court addresses a question of law,

28

this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 639 (2003). The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d). . . ." *Id.* at 636. Within this disciplined framework, the court addresses Williams' claims.

Williams argues his attorneys provided constitutionally ineffective assistance by failing to challenge the testimony of Officer Davis, by failing to ensure his motion to suppress and motion to continue at trial were preserved for hearing and review, and by failing to request evidence regarding the dice and table allegedly used to cheat Williams out of money which provided justification for Williams to return to the pool hall armed.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme set forth the clearly established federal law on the issue of ineffective assistance of counsel. The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. The petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel. First, the petitioner must establish that the performances of his attorneys "fell below an objective standard of reasonableness." *Strickland* 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his

defense. *Id.* at 687.  To establish prejudice, the petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Williams*, 529 U.S. at 393 n.17.  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).  The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991).  Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

### 1. Motion to Suppress and Motion to Continue

Williams argues that counsel should have ensured he had a hearing on his motion

to suppress the gun and ammunition seized from a van outside the curtilage of the property listed in the search warrant. *Respondents' Exhibit A - Doc. No. 32-1* at 25-26 (Motion to Suppress). Williams maintains that he would have succeeded on his motion because the evidence seized was outside the scope of the warrant. He argues that counsel also should have preserved a motion to continue trial.

Trial originally was set for April 18, 2005. It later was continued to November 28, 2005. *Respondents' Exhibit A - Doc. No. 32-1* at 3. A week before trial was scheduled to begin, counsel for Williams filed a motion to suppress. *Respondents' Exhibit A - Doc. No. 32-6* at 25. New counsel for Williams appeared on the Friday before trial began, and on the day trial began, after the jury was struck, Williams's new counsel reminded the court of the motion and renewed the motion to suppress. *Id.* at 34-35. The trial court denied the motion stating, "I do my motions to suppress weeks in advance before a trial." *Id.* at 34. The court told new counsel, "If you filed a motion to suppress . . . we would have heard it this morning before this trial ever got started. But now it's too late. I mean, I'm ready for the trial to start. I hear motions to suppress before trial." *Id.* at 35. The court also refused to continue trial stating, "this defendant is notorious for getting new lawyers at the last minute and playing games with the Court to try to get continuances, which we're not doing." *Id.* at 34.

Williams' motion to continue was meritless, thus Williams suffered no prejudice

when counsel failed to pursue the denial of a continuance.  *E.g., Robinson v. State*, 581 So.2d 1197, 1201 (Ala. Crim. App. 1990) (no abuse of discretion where defendant's delay tactic was grounds for denying motion for continuance).  As for the motion to suppress, even assuming counsel performed deficiently in not preserving error and ensuring Williams had a hearing on his motion to suppress, Williams fails to show he was prejudiced by counsel's performance because there is not a reasonable probability that the outcome of the proceeding would have been different if the court held a hearing on the motion to suppress. Officers seized the gun and ammunition from a van that belonged to Williams' father or stepfather.  *Respondents' Exhibit A - Doc. No. 32-9* at 19.  The court of appeals noted it was unclear whether the van was the same vehicle described as a truck that Williams borrowed on the night of the shooting.  *Respondents' Exhibit D - Doc. No. 32-14* at 4 n.2. Respondents argue Williams suffered no prejudice because he had no expectation of privacy in the van or truck, thus he had no standing to challenge admissibility of any evidence seized from them.  Williams now states "the van actually belonged to Williams but was . . . registered to his step-father and mother because he allowed them transportation before the van broke down."  *Petitioner's Resp. - Doc. No. 37* at 17.  Williams admits the van was registered to his step-father and mother and that they used it for their transportation.  Other than his sole statement that it "actually belonged" to him, Williams does not state that he had title to the van nor does he suggest that he regularly drove the

van or maintained control over it; instead, Williams concedes his step-father and mother used the van for transportation, maintained control over the van and had registered the van in their name.  Williams was not in the area when the search warrant was executed. Williams did not have control or possession of the van, and he did not have a reasonable expectation of privacy in it.[8]  *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (person lacked standing to challenge search when he "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized").  "[F]ailure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender*, 16 F.3d at 1573.  Consequently, Williams cannot obtain relief on his claim that counsel should have pursued a motion to suppress the gun and ammunition, and the Alabama court's ruling was not contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).

## 2.  Testimony of Officer Davis

Williams argues that counsel should have objected to Officer Davis' testimony that he heard gunshots while two blocks away from the place where Ledyard was shot, and that, in his opinion, the gunshots did not sound like a .40 caliber gun.  *Respondents' Exhibit A - Doc. No. 32-8* at 9, 14.[9]  Williams argues that Davis was not "certified as an expert" and,

---

[8]Williams also did not have a reasonable expectation of privacy in the truck he borrowed and then returned to its owner the night of the shooting.  *Respondents' Exhibit D - Doc. No. 32-14* at 4 n.2.

[9]Williams does not dispute that Davis had extensive personal experience with the use of a .40 caliber handgun.

therefore, should not have been allowed to testify as to the sounds made by a gun. *Petitioner's Resp. - Doc. No. 37* at 8.  In addition, he argues that counsel should have objected when Davis was allowed to testify on the ultimate issue at trial, that is, whether Williams shot the gun.

Williams was not prejudiced by counsel's performance.  There was ample, other evidence that a .40 caliber gun did not cause Ledyard's injuries, and that Williams killed Ledyard with the .223 caliber rifle that police later seized from the van registered to Williams' parents.  *Respondents' Exhibit D - Doc. No. 32-14* at 2-5 (discussing witness testimony, defendant's statements, evidence discovered, and ballistics evidence and testimony).  Williams cannot demonstrate he received ineffective assistance when counsel failed to challenge Davis' testimony, and his claim is not a basis for federal habeas relief. *See* 28 U.S.C. § 2254(d); *Bolender*, 16 F.3d at 1573.

### 3.  Evidence Related to the Table and Dice

Williams insists that if counsel had presented to the jury the actual table and dice that he alleges were rigged to cheat him out of his money, the outcome of the trial would have been different.[10]  The court disagrees.  The jury heard evidence that Williams did not

---

[10]Williams characterizes this as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the prosecution to disclose, upon request, evidence within its possession that is material to the defendant's guilt or punishment.  *See Mize v. Hall*, 532 F.3d 1184, 1193 (11th Cir. 2008).  However, there is nothing to indicate that the prosecution had possession of the dice or gaming table.  Instead, Williams complains that law enforcement officials did not "collect or have the [dice and table] examined."  *Petitioner's Resp. - Doc. No. 37* at 29.

have much money, that he was under great financial stress in caring for his child and girlfriend, and that Ledyard engaged in a crooked game that cost Williams $1500. The jury likewise heard Williams' explanation for why he went armed with a rifle to speak with Ledyard. The jury considered Williams' defense along with the other evidence, and it determined that Williams committed the crimes of reckless murder and assault. There was sufficient evidence to support the jury's verdict, *see Respondents' Exhibit D - Doc. No. 32-14* at 12-13, and submitting more evidence regarding the manner in which the victim cheated Williams out of his money would not have affected the outcome of trial. Williams did not receive ineffective assistance of counsel regarding presentation of the dice and table, and his does not show the Alabama ruling was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254; *Bolender*, 16 F.3d at 1573.

### 4. Summary

The court has carefully reviewed the entire record provided of the trial, the direct appeal, the postconviction proceedings, as well as the briefs and filings of the parties in this habeas action. Having done so, the court concludes that Petitioner A. C. Fox Williams has not shown that the state court determinations on any ground for issuance of a writ of habeas corpus presented to this court were contrary to, or involved an unreasonable application of, clearly-established federal law, or an unreasonable determination of the

facts.  28 U.S.C. § 2254(d).  Nor has Williams otherwise shown that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by A. C. Fox Williams be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before November 21, 2013, the parties may file objections to the Recommendation.  Objections must specifically identify the findings in the Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the

former Fifth Circuit handed down prior to September 30, 1981.).

Done this 6th  day of November, 2013.


                              /s/Terry F. Moorer
                              TERRY F. MOORER
                              UNITED STATES MAGISTRATE JUDGE